UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:01CR219(JCH) |
| | : | Civ. No. 3:03CV704(JCH) |
| v. | : | |
| | : | April 4, 2005 |
| DARIUS MCGEE | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S AMENDED
PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255**

On April 25, 2002, the Court sentenced Darius McGee (the
"defendant") to a term of imprisonment of 115 months and three
years of supervised release after his guilty plea to violating 21
U.S.C. § 841(a)(1)(possessing with the intent to distribute and
distributing cocaine base).  On April 17, 2003, the defendant
filed a motion pursuant to 28 U.S.C. § 2255.

In his original section 2255 petition, the defendant
presented two claims.  First, he sought collaterally attacked two
prior state court convictions as unconstitutional and requested
an evidentiary hearing concerning those convictions.[1]  Second, he
claimed that Timothy Aspinwall, Esq., his attorney in the
underlying federal criminal matter, provided ineffective
assistance of counsel by failing to file notice of appeal.

On March 22, 2005, after the Court appointed counsel to
represent the defendant in this matter, the defendant filed an
amended petition.  In the amended petition, he reasserts the

_____

[1] The defendant does not assert this claim in his amended
petition.  The Government thus respectively requests that the
Court deem this claim abandoned.  The Government previously
addressed this claim in its June 3, 2003 memorandum.

claim based upon Mr. Aspinwall's alleged failure to file an appeal and adds two new claims: (1) that he advised Mr. Aspinwall that his offense did not involve crack cocaine, but rather cocaine hydrochloride, and that he therefore should have been sentenced based on the Sentencing Guidelines relating to cocaine hydrochloride, not crack cocaine and (2) the District Court improperly calculated the quantity of crack cocaine attributable to him.

## I.    PROCEDURAL HISTORY

On September 19, 2001, a federal grand jury sitting in Bridgeport returned a three-count Indictment against the defendant alleging that he violated 21 U.S.C. § 841(a)(1) on three separate occasions: June 6, 2001, June 28, 2001, and July 12, 2001.  (See Gov't Ex. 1.)[2]

After the defendant's arraignment, the Government provided discovery to the defendant.  The discovery included redacted copies of the Drug Enforcement Administration investigatory reports.  Those reports repeatedly referred to "crack cocaine."[3]

On January 18, 2002, the defendant pleaded guilty to Count

---

[2]  To avoid confusion, the Government refers to the exhibits using the same exhibit numbers as those used in the Government's memorandum dated June 3, 2003.  The Government respectfully requests that the Court incorporate those exhibits into this memorandum.

[3]  The Government has not included those reports as exhibits to this memorandum.  The Government respectively requests that the Court notify it if the Court would like to review them.

One of the Indictment.  (See Gov't Ex. 2.)  At the plea
proceeding, the defendant executed a written plea agreement.
(See Ex. 3) The plea agreement itself outlined that the defendant
was pleading guilty to possessing with the intent to distribute
"cocaine base, also known as crack cocaine."  (See id. at 1 & 6.)
At the plea proceeding, the defendant was advised of the elements
of the offense to which he was pleading guilty and the
Government's proof if the matter proceeded to trial.

      As part of the plea agreement, the defendant also stipulated
that he possessed with the intent to distribute "cocaine base,
also known as crack cocaine," on June 6, 2001, June 28, 2001, and
July 12, 2001.  (See id. at 8.)

      On April 25, 2002, the Court sentenced the defendant to a
term of imprisonment of 115 months and three years of supervised
release following his imprisonment.  (See Gov't Ex. 4.)  Before
sentencing, the United States Probation Office prepared a
Presentence Report.  (See Sealed Gov't Ex. 5.) The Offense
Conduct section of the PSR outlined that a confidential informant
reported to law enforcement on June 1, 2001 that the defendant
was selling crack cocaine and that the defendant sold "cocaine
base" on several occasions to the confidential informant and an
undercover federal law enforcement officer beginning on June 6,
2001.  (See Sealed Gov't Ex. 5, ¶¶ 5, 6, 7, 8, 9, 10).  In
addition, the PSR recounted that:

> The defendant during his change of plea and at his
> presence report interview, in the presence of
> counsel, agreed with the Government's version of the
> offense.  Mr. McGee admitted that on the dates in
> question, he sold cocaine base to an undercover agent
> and to a confidential informant.  The defendant stated
> that he sold the drugs to support his own habit.

(<u>See</u> Sealed Gov't Ex. 5, ¶ 13.)

At sentencing, the United States Probation Office calculated that the defendant possessed 23 criminal history points, which placed him within Criminal History Category VI.  (<u>See</u> Sealed Gov't Ex. 5, ¶ 33.)  The Probation Office also concluded that the defendant's prior criminal record qualified him as a Career Offender. (<u>See</u> <u>id.</u> ¶ 21.)  Based on the Presentence Report's determination that the defendant qualified as a Career Offender, it calculated that the defendant's Sentencing Guideline range was between 151 and 188 months.  (See id. ¶ 70.)  The Government agreed with that calculation and respectfully requested that the court sentence the defendant at the low-end of that range.  (<u>See</u> Gov't Ex. 6.)  Over the Government's objection, the Court departed downward to 115 months based on its belief that the defendant's status as a Career Offender over-stated the seriousness of his criminal history.

**II.**

4

III.  DISCUSSION

   A.   **The Defendant's Attorney's Failure To File A Notice of Appeal Does Not Constitute Ineffective Assistance of Counsel**

        As to the defendant's claim that Mr. Aspinwall failed to file an appeal after being instructed to do so, the Government relies on its response contained in its memorandum dated June 3, 2003.

   B.   **The Defendant Was Properly Sentenced**

        The defendant next claims that he advised Mr. Aspinwall that he possessed with the intent to distribute cocaine hydrochloride, not crack cocaine, and that he therefore should have been sentenced based upon the Sentencing Guideline applicable to cocaine hydrochloride, not crack cocaine.

        This claim is frivolous.  It is belied by the express terms of the defendant's plea agreement and stipulation of offense conduct and the defendant's statements to the United States Probation Office during his interview.

        Further, the defendant's failure to object to the Offense Conduct section of the PSR casts serious doubt on the veracity of the defendant's current claim.  For example, paragraph 5 of the PSR explicitly states that a confidential informant reported to the DEA on June 1, 2001 that the defendant was selling "crack cocaine," (see PSR ¶ 5,) and paragraph 8 describes the substance

that the defendant sold the confidential informant on June 6,
2001 as "a brownish rocky substance." (See id. ¶ 8.)  Similarly,
paragraph 9 recounts that the defendant subsequently sold a
substance identified in the PSR as "cocaine base" and described
as "a brown rock like substance."  (See id. ¶ 9.)  Paragraph 10
contains a similar description of the substance the defendant
sold on another occasion.

The defendant's new claim, first raised in the filing dated
March 22, 2005, should be denied.  Cf. Warren v. United States,
2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005) (Thompson,
J.)(addressing similar claim).  Even if the District Court
accepts that claim, his sentence still would have been driven by
his status as a Career Offender, not the type and quantity of
controlled substance.

Accordingly, the defendant's claim should be dismissed
summarily.

**C.  <u>Booker Does Not Apply To Collateral Challenges</u>**

Relying on <u>United States v. Booker</u>, 125 S. Ct. 738 (2005),
the defendant next claims that the District Court improperly
sentenced him in light of <u>Booker</u>.

In <u>Booker</u>, the Supreme Court held that the United States
Sentencing Guidelines violated the Sixth Amendment principles
articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), and
determined that a mandatory system in which a sentence is

6

increased based on factual findings by a judge violates the right
to trial by jury.   The principle adopted in Booker, like the
principle adopted in Blakely, constitutes a "new constitutional
rule of criminal procedure" which, under Teague v. Lane, 489 U.S.
288 (1989), is not retroactively applicable to cases, such as the
defendant's case, that became final before the decision was
announced.

    In McReynolds v. United States, 397 F.3d 479, 481(7th Cir.
2005), the Seventh Circuit held that "Booker does not apply
retroactively to criminal cases that became final before its
release on January 12, 2005. . . . Booker itself represents the
establishment of a new rule about the federal system.
Petitioners' convictions and sentences became final well before
Booker was issued, and its approach therefore does not govern
these collateral proceedings."  Id.; see Varela v. United States,
400 F.3d 864, 868 (11th Cir. 2005) (Booker does not apply
retroactively); Humphress v. United States, 398 F.3d 855, 860
(6th Cir. 2005) (Booker does not apply retroactively); Mingo v.
United States, 2005 WL 627637, *2 (S.D.N.Y. Mar. 17, 2005)(Booker
does not apply retroactively to habeas review); Woodward v.
United States, 2005 WL 524725 *2 (E.D.N.Y.  Mar. 7, 2005) (Booker
does not apply retroactively to habeas review); Hamdani v. United
States, 2005 WL 419727 *1 (E.D.N.Y. Feb. 22, 2005) (Booker does
not apply retroactively to habeas review); Warren v. United

States, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005)
(Thompson, J.) (Apprendi, Blakely and Booker do not "afford[]
relief" to the petitioner on collateral attack); see also, e.g.,
United States v. Russell, 2005 WL 281183 (E.D. Pa. Feb. 3,
2005)(Booker not retroactive); Tuttamore v. United States, 2005
WL 234368 (N.D. Ohio Feb. 1, 2005) ("To the extent that
petitioner relies on Booker, he cannot so prevail, because the
decision in Booker is not retroactive for purposes of § 2255
collateral attacks."); Gerrish v. United States, 2005 WL 159642
(D. Me. Jan. 25, 2005)(same).  See also Green v. United States,
397 F.3d 101 (2d Cir. 2005)(denying motion to file second or
successive application on the basis of Booker because Supreme
Court has not explicitly made Booker or Blakely retroactive on
collateral attack).

        This Court should follow the reasoning of the courts which
have found Booker unavailable on collateral attack.  For example,
McReynolds relied on Schriro v. Summerlin, 124 S. Ct. 2519
(2004), a case in which the Supreme Court considered whether Ring
v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases
that had already become final when Ring was decided.  Ring held
that, because Arizona law authorized the death penalty only if an
aggravating factor was present, Apprendi required the existence
of such a factor to be proved to a jury rather than to a judge.
Summerlin's conviction and death sentence, which was imposed

under the same Arizona law that was at issue in <u>Ring</u>, became
final long before <u>Ring</u> was decided.

The Supreme Court held that "<u>Ring</u> announced a new procedural
rule that does not apply retroactively to cases already final on
direct review." <u>Ring</u>, 124 S. Ct. at 2526.  The Court explained
that a "new rule" resulting from one of its decisions applies to
convictions that are already final only in limited circumstances.
New *substantive* rules generally apply retroactively, but new
*procedural* rules generally do not – only "watershed rules of
criminal procedure implicating the fundamental fairness and
accuracy of the criminal proceeding" are given retroactive
effect.  <u>Id</u>. at 2523 (internal quotation marks omitted).  The
Court concluded that <u>Ring</u>'s holding was properly classified as
procedural, rather than substantive, because it did not alter the
range of conduct or the class of persons subject to the death
penalty in Arizona; instead, it merely changed the method of
determining whether the defendant engaged in that conduct.  <u>See
id</u>. at 2523-24.  The Court also held that <u>Ring</u> did not fall
within <u>Teague</u>'s narrow exception for "watershed rules" of
criminal procedure.  The Court explained that, to qualify as a
watershed rule, a new procedural rule must be one "without which
the likelihood of an accurate conviction is *seriously*
diminished." <u>See id.</u> at 2523 (quoting <u>Teague</u>, 489 U.S. at 313)
(emphasis added in <u>Summerlin</u>).  The Court held that <u>Ring</u> did not

9

announce a watershed rule of criminal procedure because it could
not confidently say that judicial fact finding seriously
diminished the accuracy of capital sentencing proceedings.  Id.
at 2424-25.

Consistent with the reasoning of Summerlin, the Second
Circuit has held, like every other Court of Appeals to have
considered the issue, that Apprendi is not a procedural rule that
falls within the "watershed rule" exception and thus is not
retroactively applicable to cases on collateral review. See
Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied,
124 S. Ct. 840 (2003).[4]  Importantly, the Second Circuit in
Coleman held that Apprendi was not a watershed rule despite the
difference between using the jury and the judge as factfinder and
despite the difference in the relevant burdens of proof, that is
a preponderance-of-the-evidence standard versus a beyond-a-
reasonable-doubt standard.

In Coleman, the Second Circuit noted that, in order to
constitute a "watershed" rule of criminal procedure, "a rule must

---

[4] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir.
2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert.
denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d
139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th
Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United
States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States,
294 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993
(8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664
(9th Cir. 2002); United States v. Mora, 293 F.3d 1213 (10th Cir.
2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001).

not only improve the accuracy of criminal proceedings, but also
alter our understanding of the bedrock procedural elements
essential to the fairness of those proceedings. In short, it must
be a groundbreaking occurrence." Coleman, 329 F.3d at 88
(internal quotation marks, alterations, and citations omitted).
"Apprendi did not cut a new rule from whole cloth. It merely
clarified and extended the scope of two well-settled principles
of criminal procedure: the defendant's right to a jury trial and
the government's burden of proof beyond a reasonable doubt." Id.
at 89 (internal quotation marks omitted).  The Colman Court's is
firmly grounded in earlier decisions of the Supreme Court and the
Second Circuit holding that Apprendi errors may be reviewed for
harmlessness, not structural error – a conclusion that would have
stood in tremendous tension with a determination that Apprendi
announced a watershed rule, see id. at 89-90 – that is, one of
the "small core of rules requiring the observance of those
procedures that . . . are implicit in the concept of ordered
liberty." Id. at 88 (internal quotation marks and citations
omitted).

    Coleman involved a determination that a change in the
identity of the relevant fact-finder *and* an increase in the
burden of proof were insufficient to constitute a "watershed"
rule of criminal procedure.  Because Booker did not entail either
of those changes – but instead maintained the identity of the

11

fact-finder at sentencing as well as the preponderance of the evidence standard – it follows, *a fortiori*, that <u>Booker</u>'s rule falls short of being a "watershed" rule.  Indeed, as the Second Circuit recently posited in <u>United States v. Crosby</u>, 2005 WL 240916 (2d Cir. Feb. 2, 2005), the district court might very well have imposed the same sentence regardless of whether the Guidelines were binding (as before <u>Booker</u>) or advisory (after <u>Booker</u>), and that district judges might impose higher *or* lower sentences in <u>Booker</u>'s wake.   In short, <u>Booker's</u> holding simply does not shift the foundations of American constitutional law and hence does not apply retroactively on collateral attack.

   <u>Booker</u> entailed an extension of the procedural rule announced in <u>Apprendi</u> that factual findings that increase the maximum penalty permitted by law must be found by a jury beyond a reasonable doubt. The Supreme Court has defined a "new rule" under <u>Teague</u> as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'"  <u>Graham v. Collins</u>, 506 U.S. at 467 (quoting <u>Teague</u>, 489 U.S. at 301 (emphasis in <u>Teague</u>)); <u>see</u> <u>Sawyer v. Smith</u>, 497 U.S. 227, 234 (1990).  Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, <u>Sawyer</u>, 497 U.S. at 236, "or even control or govern" it, <u>Saffle v. Parks</u>, 494 U.S. 484, 491 (1990).  Under that definition, <u>Booker</u> announced a new rule for <u>Teague</u> purposes.

12

Moreover, while not directly addressing the retroactivity of its extension of <u>Blakely</u> to the Sentencing Guidelines and its holding that those Guidelines would be advisory, the "merits majority" of <u>Booker</u> clarified that its holding on the merits and the remedy of the Sixth Amendment claim was to apply "to all cases on direct review." 2005 WL 50108 at *29 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). This statement has already been read by one court, in the context of a successive petition, as limiting the application of the rule to cases in the direct review pipeline especially in view of the fact that the Supreme Court has already concluded that <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), a case which applied the principle of <u>Apprendi</u> to death sentences imposed on the basis of aggravating factors, was not to be applied retroactively to cases once they were final on direct review. <u>See</u> <u>Hamlin v. United States</u>, 2005 WL 102959 at *1 (citing <u>Schriro v. Summerlin</u>, 124 S. Ct. at 2519, 2526 (2004)("<u>Ring</u> announced a new procedural rule that does not apply retroactively to cases already final on direct review.")); <u>see also</u> <u>Stevens v. United States</u>, 2005 WL 102958 (D. Me. Jan 18, 2005).

In short, <u>Booker</u>, which represents an extension of <u>Apprendi</u>,

13

does not apply on collateral review.[5]

Conclusion

In conclusion, the Government respectfully requests that the court deny the defendant's amended petition.

                    Respectfully submitted,

                    KEVIN J. O'CONNOR
                    UNITED STATES ATTORNEY

                    JAMES J. FINNERTY
                    ASSISTANT UNITED STATES ATTORNEY
                    United States Attorney's Office
                    915 Lafayette Blvd.
                    Bridgeport, Connecticut 06604
                    (203) 696-3000
                    Fed. Bar No. CT15203

---

[5] To the extent that the defendant conclusorily asserts that Mr. Aspinwall should have explained the sentencing concept of relevant conduct, for which he offers no evidence that Mr. Aspinwall did not do so, Mr. Aspinwall's alleged failure to do so did not prejudice the defendant, as required pursuant to Strickland v. Washington, 466 U.S. 668 (1984), since the defendant's sentence was driven by the defendant's status as a Career Offender, not the quantity or type of narcotics attributed to him. Indeed, contrary to prejudicing the defendant, Mr. Aspinwall obtained a plea agreement for the defendant in which the Government agreed not to file notice of its intent to seek an enhancement pursuant to 21 U.S.C. ¶ 851 based on the defendant's prior criminal record. The Government's concession reduced the defendant's base offense level as a Career Offender and, ultimately, decreased the defendant's Sentencing Guideline range.

<u>CERTIFICATE OF SERVICE</u>

    This is to certify that a copy of the foregoing was sent via United States Mail, First Class, postage prepaid, and on this April 5, 2005, to the following:

Robert Sullivan, Esq.
190 Main Street
Westport, Connecticut 06880
(Counsel for the Defendant)

Timothy Aspinwall, Esq.
3200 Main Street
Stratford, Connecticut 06497

                           JAMES J. FINNERTY